UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Frances Pudeler,
    *Plaintiff*,

    *v.*

United States of America,
    *Defendant*.

Civil No. 3:09cv1543 (JBA)

September 30, 2010

RULING ON MOTION TO DISMISS

    Plaintiff Frances Pudeler has filed suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 against Defendant United States of America for personal injuries that she alleges were caused by the negligence of agents of the United States Department of Homeland Security, Transportation Security Administration, arising out of events that occurred on May 26, 2007 as she passed through a security–inspection checkpoint at Bradley International Airport (BDL) in Windsor Locks, Connecticut. The United States moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject–matter jurisdiction. For the following reasons, the Court concludes that it has not been shown to lack subject–matter jurisdiction, and Defendant's motion to dismiss will be denied at this stage.

I. Background[1]

    A. Transportation Security Administration

On November 19, 2001, Congress passed the Aviation and Transportation Security Act (ATSA), Pub. L. 107–71, 115 Stat. 597 (2001) (codified in 49 U.S.C. § 114), to strengthen national security through the federalization of the responsibility for ensuring civil air transportation security. (*See* H.R. Conf. Rep. No. 107–296, 53 (2002), Ex. 1 to Def.'s Mem. Supp.) To that end, the ATSA created the Transportation Security Administration (TSA), headed by an Administrator who is required to "provide for the screening of all passengers and property . . . that will be carried aboard a passenger aircraft operated by an air carrier or foreign air carrier in air transportation or intrastate air transportation." 49 U.S.C. § 44901(a). The ATSA tasks the Administrator with "develop[ing] policies, strategies, and plans for dealing with threats to transportation security" and "oversee[ing] the implementation, and ensur[ing] the adequacy of security measures at airports and other transportation facilities." 49 U.S.C. §§ 114(f)(3), 114(f)(11). TSA is authorized "[t]o carry out such other duties, and exercise such other power, relating to transportation during a national emergency as the Secretary [of Homeland Security] shall prescribe." 49 U.S.C. § 114(g)(1)(D).

---

[1] In adjudicating a motion under Rule 12(b)(1) for lack of subject-matter jurisdiction, the court may consider material outside the pleadings, including "by affidavit or otherwise." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). When facts are disputed on a challenge to the court's jurisdiction, "the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Filetech S.A. v. Fr. Telecom*, 157 F.3d 922, 932 (2d Cir. 1998) (citing *S.A. Antares Aircraft, L.P. v. Fed. Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991)).

According to Dale Mason, a Program Analyst in the Office of Security Operations at TSA, "[i]n order to discharge [its] obligation" to take certain measures intended to prevent and preempt threats to national security and the safety of commercial air travel, including the pre–flight screening of passengers and their accessible property, "TSA has installed and maintained screening checkpoints at federalized airports." (Mason Decl., Ex. 3 to Def.'s Mem. Supp. at ¶¶ 4–5.) The TSA also "has promulgated Standard Operating Procedures (SOPs) that seek to effectuate uniform policy to safeguard the civil air transportation system" and "implement[s] guidelines for the configuration and management of checkpoints." (*Id.* at ¶¶ 6, 7.) According to Brian English, the TSA Assistant Federal Security Director for Screening, who oversees security screening at BDL, "[t]he manner in which TSA chooses to manage their security checkpoints is decided by the TSA agents assigned to a particular airport who use their best judgment consistent with carrying out TSA's mission of ensuring secure air travel." (English Decl., Ex. 2 to Def.'s Mem. Supp. at ¶ 10.)

B. Plaintiff's Claim

At noon on May 26, 2007, during Memorial Day weekend, Pudeler was passing through the TSA–designated security checkpoint at BDL on her way to her place of employment at the airport Paradise Shops, in the secured area of the airport. (Am. Compl. [Doc. # 15] at ¶ 9.)

As Pudeler was rushed through the security checkpoint and was retrieving her belongings in the exit area and leaving the security–line, a "'bottleneck' had developed and was getting worse as the crowds of people were rushing to collect their property." (Pudeler Decl., Ex. 1 to Pl.'s Mem Opp'n [Doc. # 28] at ¶¶ 9–10.) The TSA agents working at the

3

checkpoint observed the bottleneck. (*Id.*) Pudeler says the bottleneck at the end of the security line resulted from a businessperson in front of her securing his property including a computer and from a mother traveling with a stroller/seat device and her small children. (*Id.* at ¶ 11.) The "'bottleneck' became unsafe as crowds of people just kept proceeding into the exit area and although this condition was open and obvious to TSA agents, they took no action to control the unsafe condition which appeared to be getting worse." (*Id.* at ¶ 12.) The "crowding became unsafe and was not managed at all by the TSA agents who observed this condition which was worsening directly in front of them." (*Id.* at ¶ 13.) As Pudeler rushed to get out of the bottleneck in the security line, her foot became caught on the x–ray/inspection table, and she slipped and fell to the floor, injuring her left knee cap. (Am. Compl. at ¶ 15.)[2]

II. Discussion

Defendant moves to dismiss Plaintiff's claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), for lack of subject–matter jurisdiction,[3] arguing that Plaintiff's claims are barred by the "discretionary function exception" to the FTCA and because

---

[2] Although Pudeler also alleged in her Amended Complaint that TSA was negligent in designing the lay–out of the BDL security checkpoint and that TSA agents negligently gave confusing and conflicting orders to people working their way through the checkpoint, counsel for Plaintiff clarified during oral argument that the operative formulation of Pudeler's claim is only that TSA agents negligently failed to take action as they watched a dangerous bottleneck develop at the BDL security–checkpoint, as described by Plaintiff in paragraphs 10–15 of her affidavit.

[3] A case may be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff has the burden of proving by a preponderance of the evidence that the requirements of jurisdiction are met. *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

security screening at federalized airports is a uniquely governmental function for which there is no private–party analog.

      A.      Discretionary Function Exception

The FTCA itself does not create new causes of action; rather, it imposes liability on the United States for acts of negligence performed by federal employees within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). It provides a limited waiver of the federal government's sovereign immunity to such claims. *See* 28 U.S.C. § 2671 *et seq.*

Defendant argues that because there is no federal statute or agency–wide directive, regulation, policy, rule or procedure that specifically prescribes how TSA agents manage screening areas/security checkpoints at airports including BDL, and because the TSA conduct in question stems from a policy–based function, the discretionary function exception (DFE) to the FTCA bars Plaintiff's claims as "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (emphasis added). Among other things, the DFE "'bars claims based on day–to–day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest.'" *Coulthurst v. United States*, 214 F. 3d 106, 108 (2d Cir. 2000). The purpose of the exception is to "prevent judicial 'second–guessing' of legislative and administrative decisions grounded in social, economic, and political policy through an action in tort." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).

5

In *Berkovitz v. United States*, 486 U.S. 531 (1988) and *United States v. Gaubert*, 499 U.S. 315 (1991), the Supreme Court clarified the scope of the exception and developed a two–part test for determining whether the challenged governmental conduct falls within the scope of § 2680(a):

> (1) the acts alleged to be negligent must be discretionary, in that they involve an "element of judgment or choice" and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in "considerations of public policy" or susceptible to policy analysis.

*Coulthurst*, 214 F.3d at 109 (quoting *Berkovitz* and *Gaubert*). As the Supreme Court explained in *Gaubert*:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

499 U.S. at 324–25. According to the legislative explanation of § 2680(a), the intent of Congress in enacting the FTCA was not "to authorize a suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." *Dalehite v. United States*, 346 U.S. 15, 30 (1953) (quoting the legislative record of the 77th Congress).

Pudeler contends that neither prong of the test for the DFE applies. On the first prong of the *Berkovitz–Glaubert* test, Plaintiff maintains that her claim involves no element

6

of judgment[4] or considerations of public policy, articulating at oral argument that her claim is predicated on the common–law duty of TSA agents to take reasonable care in avoiding harm to persons under their care as they pass through the required security screening. Government's counsel acknowledged TSA's general duty of care to the general public but not to any particular individual.

Dale Mason states that as of May 26, 2007, there was no statute, regulation, or TSA–wide policy mandating how agents manage security at a given security checkpoint. In the absence of such directives, the manner in which TSA agents' manage security and operations at that checkpoint was left to their judgment and choice.

The crux of the parties' jurisdictional dispute boils down to whether the TSA negligence claimed—taking no action despite observing a dangerous bottleneck condition developing—is grounded in TSA policy considerations. Not every act that involves a federal employee's exercise of judgment or discretion is grounded in governmental policy, *e.g.*, driving a car in the course of official duties involves discretionary acts but is not based on any regulatory regime and would not be subject to the DFE. *See Gaubert*, 499 U.S. at 325 n.7. It is "[t]he implementation of a regulatory scheme that grants the agency discretion to determine the best way to execute its mission [that] is entitled to discretionary function immunity." *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d at 195–96 (citing *Berkovitz*, 486 U.S. at 546.

---

[4] "An act does not involve an element of judgment or choice if it is mandatory; if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . . the employee has no rightful option but to adhere to the directive.'" *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 195 (2d Cir. 2008) (quoting *Berkovitz*, 486 U.S. at 546). Based on the Declaration of English and the Mason Affidavit, the challenged TSA conduct could not have been ministerial and was discretionary.

In *Coulthurst v. United States*, 214 F. 3d 106 (2d Cir. 2000), the Second Circuit distinguished negligent acts that constitute exercise of judgment grounded in public–policy considerations and negligent acts that are not. Mr. Coulthurst, an inmate at the Federal Corrections Institute in Danbury, Connecticut (when it housed male inmates) sued the federal government for injuries he suffered while lifting weights in the prison gymnasium when a cable snapped on a "lateral pulldown machine." The district court had decided that the DFE applied and there was no subject–matter jurisdiction because the acts alleged as negligent involved decisions about the procedures and frequency of gym inspection—"decisions themselves involving elements of judgment or choice and a balancing of policy considerations (including inmate safety, providing sufficient recreation opportunities to inmates, and efficient resource allocation)." *Id.* at 109. Remanding, the Second Circuit found the plaintiff's "negligent maintenance" claim to be "susceptible to various readings" and that the complaint was broad enough to cover both the type of negligence found by the district court, but also negligence involving discretionary conduct unrelated to any plausible policy objectives, such as "[a]n inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines, or an absent-minded or lazy failure to notify the appropriate authorities upon noticing the damaged cable," which would fall outside the exception. *Id.* at 109, 111.

Pudeler's allegations that TSA agents at BDL negligently did nothing as they watched the crowded security–checkpoint "bottleneck" became unsafe, like Mr. Coulthurst's allegations, can be interpreted in more than one way. While it could be inferred from Plaintiff's allegations that TSA agents at BDL decided not to, or could not respond to the overcrowding because they were focused on monitoring air travelers and looking for

8

potential threats on a busy holiday weekend, it could also be inferred that TSA agents stood idly by, indifferently watching as a dangerous situation developed before their eyes and doing nothing to mitigate the resulting risk. The former situation would directly implicate policy–decisions: TSA's mission is air–travel security, and the agents' conduct, even if negligent, resulted from a judgment–call or decision to focus their resources and energy on uninterrupted screening of all passengers, and the DFE would bar jurisdiction. Plaintiff's complaint, as narrowed at oral argument, does not compel only that reading, and if TSA agents, even though tasked with ensuring airport security, watched as a dangerous, chaotic situation developed at their checkpoint and negligently failed to respond but could have done so without compromise to their security–monitoring function, then the TSA agents' actions may be comparable to the federal employee in *Coulthurst* tasked with inspecting gym equipment in a federal prison who may have lazily taken a smoke break instead of reporting a damaged cable in a weight machine. Alternatively, such a failure to alleviate the bottleneck, an observable hazard, may be akin to seeing a banana peel fall on the floor of the security checkpoint and doing nothing to prevent travelers from slipping and falling on it as they passed through, which Government's counsel recognized at oral argument might be actionable under the FTCA. Interpreting Plaintiff's allegations in this way, the nature of the conduct alleged is like the negligence the Second Circuit held in *Coulthurst* would not be tied to a policy decision and not protected by the DFE. Therefore, at this initial stage, the Court will not read Plaintiff's narrowed negligence claim as definitively barred by the DFE.

    B.    Uniquely Governmental Function

The United States also moves to dismiss on the basis that in providing security at BDL, TSA agents perform a uniquely governmental function, and the FTCA therefore does

9

not waive sovereign immunity for claims arising from such operations. The FTCA makes the United States liable "in the same manner and to the same extent as a private individual under *like circumstances.*" 28 U,S.C. § 2674 (emphasis added). The United States maintains that because private individuals cannot act in "like circumstances" comparable to providing security at airports, the FTCA does not apply. However, in *United States v. Olson*, the Supreme Court stated that "'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield." 546 U.S. 43, 46 (2005) (emphasis in original). It explained that although the federal Mine Safety and Health Administration is tasked with ensuring mine safety, "private persons who conduct safety inspections" may act in "like circumstances to federal mine inspectors." *Id.* at 47. Similarly, in *Indian Towing Co. v. United States*, the Supreme Court considered a claim that the Coast Guard, responsible for operating a lighthouse, failed to check the light's battery and sun–relay system and failed to check the light on a regular basis or repair it when it was not operating. 350 U.S. 61, 62 (1955). Although the Coast Guard was exclusively tasked with maintaining the lighthouse, the Court held that the allegations were analogous to allegations of negligence by a private person "who undertakes to warn the public of danger and thereby induces reliance." *Id.* at 64–65.

Here, although it is exclusively TSA's responsibility to screen air travelers before permitting them into certain airport areas, TSA agents' security functions are comparable to private persons or agencies that provide security at any building or facility, inspecting people and their hand luggage by means of security checkpoints at entrances to insure no dangerous items are brought inside—a function that has become regrettably common after September 11. While private parties do not provide security at airports, they do provide

security with the same objectives elsewhere in a similar fashion to TSA agents, and the United States's position that there is no private–party analogue to TSA does not warrant dismissal of Pudeler's claims at this time.

III.   Conclusion

Accordingly, the Court has subject–matter jurisdiction unless and until a more fully–developed record shows that it is lacking. Defendant's [Doc. # 16] Motion to Dismiss is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of September, 2010.